IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-CV-01576-RBJ-CBS

RICHARD MATTHEW NIEDERMEYER,

    Plaintiff,

v.

BANK OF AMERICA, N.A., as successor in interest to Countrywide Mortgage Co.,

    Defendants.

## ORDER

    Defendant, Bank of America, N.A., (hereafter "Bank of America" or simply "the bank") moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively, for summary judgment under Fed. R. Civ. P. 56(a).

**Federal Jurisdiction**

    Plaintiff, Richard Mathew Niedermeyer, filed this case in the Grand County District Court in June 2010. In July 2010 the bank removed the case to this Court on the basis of diversity of citizenship. Although plaintiff did not seek a remand, the Court *sua sponte* issued an order to show cause as to how the amount in controversy exceeded the sum of $75,000. In response the defendant provided some somewhat obscure figures that show, according to the defendant, how plaintiff's claims for actual damages total just over $77,000. The defendant also argues that plaintiff's prayer for exemplary damages pushes the sum above the line. Plaintiff did not attempt to show that he is seeking $75,000 or less. His counsel simply states that the case

could probably be completed faster in state court, and that neither party would be prejudiced by a remand.

I do not disagree that the case probably could have been completed sooner in state court. The case has now languished in this Court for one and one half years, during which time it has been reassigned to different judges twice. It is a type of case that is routinely and ably handled in our state courts. However, if a party properly invokes federal jurisdiction, the Court must accept it.

I will disregard the exemplary damages prayer in this case. It is not appropriate to include an exemplary damages prayer in a case filed in a Colorado state court. C.R.S. § 13-21-102(1.5). Defendant cites *Jarmon v. Pacific Rail Services, LLC,* 2007 WL 678644 at *6 (D. Colo. 2007) but fails to cite other authority in this district to the contrary. *See Klein v. State Farm Fire and Cas. Co.*, 2009 WL 215369 at *1 (D. Colo. 2009). *See also Ayala v. Kathleen Tepper*, 2008 WL 4861970 at *2 (D. Colo. 2008); *Hill v. American Family Mut. Ins. Co.,* 2008 WL 4452141 at *1 (D. Colo. 2008). Moreover, the complaint in *Jarmon* was filed directly in federal court. Whether or not the state statute applies in such a case, it applies to a complaint filed in state court.

Nevertheless, because defendant has offered a theory and numbers, and plaintiff has offered nothing to the contrary, the Court finds that the amount in controversy exceeds $75,000, and federal jurisdiction exists.

**Facts**

The following facts are taken from the allegations in plaintiff's complaint. In approximately 2006 plaintiff financed the purchase of a home in Granby, Colorado through two loans issued by Countrywide Mortgage Company. In 2008 the loan secured by a second deed of

trust on the property went into default. In July 2008 plaintiff was approached by two loan officers of the Bank of America, Jessica Worthy and Nakeya Johnson. The Bank of America had by then acquired Countrywide. The two loan officers suggested that Mr. Niedermeyer could consolidate the two loans and have his payments reduced to something he could afford. In order to do this, however, he had to miss one monthly payment, apparently on the loan secured by the first mortgage, thereby defaulting on the loan, and then make one payment of $6,000 and one payment of $7,000 to "tie up the new loan." After he made those payments and two additional payments of approximately $3,030 each, the bank returned the latter two payments and informed him that the loan restructuring would no longer work. Plaintiff never heard from either individual again.

In October 2009 plaintiff was approached by a Bank of America loan officer named Phillip Scourten who made similar promises to him about restructuring his loan. Mr. Scourten allegedly requested that plaintiff make one payment of $16,000 and additional payments of $2,000 every two weeks before his loan could be modified. Plaintiff made these payments through December 15, 2009. However, on at least two occasions his tendered checks were refused and returned to him.

Despite previous assurances otherwise, on February 28, 2010 Mr. Scourten told plaintiff that the loan modification would not go through. He would not tell plaintiff the reason for this change. A foreclosure sale was set for March 5, 2010 but was stopped when plaintiff filed for Chapter 7 bankruptcy protection.

Plaintiff alleges that these actions by bank representatives caused his mortgage debt to increase from $400,000 to $440,000. According to the defendant's analysis for purposes of removal, the additional $40,000 plus the sum of the extra payments plaintiff made allegedly as a

result of the representatives of the bank's agents pushed his total out of pocket damages above $75,000. Plaintiff asserts four claims for relief: (1) breach of contract; (2) fraud; (3) civil conspiracy; and (4) respondeat superior liability.

**Motion to Dismiss [docket #19]**

Defendant moves to dismiss plaintiff's claims for failure to state a claim upon which relief could be granted. The primary emphasis of the motion is defendant's argument that the claims are barred by the statute of frauds.

The applicable statute of frauds is found at C.R.S. § 38-10-124(2). It provides:

> Notwithstanding any statutory or case law to the contrary, including but not limited to section 38-10-112, no debtor or creditor may file or maintain an action or a claim relating to a credit agreement involving a principal amount in excess of twenty-five thousand dollars unless the credit agreement is in writing and signed by the party against whom enforcement is sought.

A "debtor" is "a person who or entity which obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor." C.R.S. 38-10-124(1)(c). Plaintiff has not disputed that he is a "debtor" as defined in the statute. *See* Plaintiff's Response to Defendant's Motion to Dismiss at 1.

A "creditor" is a financial institution which offers to extend, is asked to extend, or extends credit under a credit agreement with a debtor. C.R.S. 38-10-124(1)(b). A "financial institution" is "a bank, savings and loan association, savings bank, industrial bank, credit union, or mortgage or finance company." C.R.S. 38-10-124(1)(d). Plaintiff has not disputed that the Bank of America is a "creditor" as defined in the statute. *See* Plaintiff's Response at 1.

A "credit agreement" is:

(I)   A contract, promise, undertaking, offer, or commitment to lend, borrow, repay, or forbear repayment of money, to otherwise extend or receive credit, or to make any other financial accommodation;

4

      (II)      Any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any of the credit agreements defined in subparagraphs (I) and (III) of this paragraph (a); and

      (III)      Any representations and warranties made or omissions in connection with the negotiation, execution, administration, or performance of, or collection of sums due under, any of the credit agreements defined in subparagraphs (I) and (II) of this paragraph (a).

C.R.S. 38-10-124(1)(a). Plaintiff has not disputed that the agreements alleged to have occurred between Mr. Niedermeyer and two representatives of the bank in or about July 2008 (Complaint ¶¶5-6) and between Mr. Niedermeyer and Mr. Scourten between October 2009 and February 2010 (Complaint ¶¶7-8) are "credit agreements" as defined in the statute or that the agreements involve principal amounts in excess of twenty-five thousand dollars. *See* Plaintiff's Response at 1.

      The remaining question, therefore, is whether the agreements were in writing and signed by a representative of the Bank of America. If not, plaintiff's claims, including those sounding in tort, cannot be maintained by the terms of C.R.S. 38-1-124(2). *See Norwest Bank Lakewood, Nat. Ass'n v. GCC Partnership*, 886 P.2d 299, 301-02 (Colo. App. 1994). Plaintiff's response to the motion to dismiss states that he has located "at least two documents" that contain the bank's signatures and that "arguably are sufficient to provide written evidence of Defendant's signatures on the documents." Plaintiff's Response at 1. He adds that the motion is premature, and he requests that he be allowed to conduct discovery.

      A motion to dismiss is decided on the four corners of the complaint. Plaintiff did not allege in the complaint that the credit agreements were in writing or signed by the bank, nor has plaintiff sought leave to amend the complaint to make such allegations. The statute of frauds is an affirmative defense that ordinarily would be asserted in an answer and then resolved on a

5

motion for summary judgment or at trial.  However, in some circumstances affirmative defenses can be raised in a motion to dismiss.  *See, e.g., Dave Peterson Elec., Inc. v. Beach Mountain,* 167 P.3d 175, 176-77 (Colo. App. 2007).  Here, plaintiff is vulnerable to the motion to dismiss simply because he makes no reference to any writing or signature in his complaint.

However, before the Court addressed the motion to dismiss, and probably because the Court delayed so long in doing so, defendant filed a motion for summary judgment that is also pending.  In the rather odd circumstances, the Court finds that the motion to dismiss has been supplanted by the motion for summary judgment and is therefore moot.

### Motion for Summary Judgment [docket #44]

Defendant's motion for summary judgment is likewise based upon the statute of frauds. In support of the motion defendant provides (1) a letter from Mr. Niedermeyer dated May 14, 2008 "To whom it may concern," apparently sent to the bank, in which he indicates that it has been a rough year for him as a real estate agent because of the bad real estate market, but that things were looking up, and he will be able to get his payments caught up; Ex. F; (2) testimony from the plaintiff that in approximately May or June 2008 a bank employee, Jessica Worthy, called him and indicated that he could get his payments (on the first note) reduced, but that he would have to miss a payment or two to qualify for a special program that allow that; deposition testimony from the plaintiff that this was never confirmed in any writing; Ex. B at 34-36, 76; (3) two copies of a "Repayment Plan Agreement" dated June 3, 2008, that purports to set forth the terms and conditions on which the plaintiff and the lender had agreed to repay delinquent amounts; Ex. G and H; it was signed by both parties; it allowed plaintiff to repay delinquent amounts while continuing to make regularly scheduled payments under the note on his first loan; (4) evidence that plaintiff made a $7,000 payment in June 2008 and a $6,785.80 payment in July

6

2008 under the Repayment Plan Agreement and received written confirmations; Ex. B at 81-83; (5) a notice from the bank dated August 4, 2008 indicating that the Repayment Plan Agreement was being cancelled because plaintiff missed a payment; Ex. K; deposition testimony from the plaintiff that he did not make his August payment because he was verbally told by a bank employee, Nakeya Johnson, to let the loan go into default again; Ex. B at 83-87; (6) a Loan Modification Agreement dated August 29, 2008 that plaintiff signed on September 15, 2008; Ex. L; this agreement increased the payments by about $135 a month and increased the principal balance from $400,000 to $415,658.99; it contains an exculpatory provision whereunder the borrower releases and waives all prior claims he might have had against the lender; (7) evidence that plaintiff's loan, as modified by the Loan Modification Agreement, went into default again in May of 2009; Ex. B at 92-93; (8) documents of pre-approval of Mr. Niedermeyer for workout assistance dated July 29, 2008, including a Negotiation Agreement, that Mr. Niedermeyer signed; Ex. M; Ex. B at 98-99;  the Negotiation Agreement confirmed that the note and deed of trust remain in full force and effect unless modified in writing; (9) evidence that plaintiff defaulted on this repayment agreement by failing to make the September 2009 payment when due; Ex. N; Ex. B at 105; (10) deposition testimony from the plaintiff that he defaulted because Philip Scourten, a bank employee, verbally instructed him to do so, because he had a new program coming in the mail; Ex. B at 106, 110-11; (11) a letter from Mr. Niedermeyer dated October 1, 2009 in which he indicates that he fell behind in his payment because of the crash of the real estate market, but that he believes he can get back on track; (12) documents of pre-approval of Mr. Niedermeyer for workout assistance dated October 13, 2009, again including the Negotiation Agreement, that he reviewed and signed; Ex. Q; Ex. B at 106-108; (13) evidence that plaintiff has not made a payment for a year before his May 19, 2011 deposition.  Ex. B at 80.

Plaintiff's brief in response states that plaintiff's payments were current when he was first contacted by the bank. He says that he was told that he had to be in default before he could be considered for refinancing, so he allowed his loan to go into default. He then worked with bank employees Jessica Worthy and Phillip Scourten to attempt to get a modification. He received documents that provided for revised monthly payments of approximately $5,000 as compared to his previous payment of approximately $2,595. The balance owed to the bank increased from $400,000 to $418,000. He states that while the parties were working on the refinancing, the house was in foreclosure. However, Mr. Scourten continually advised him that there were no problems, and that he would obtain a loan modification. Approximately one week before the foreclosure sale, Mr. Scourten informed him that the modification was denied without providing a reason. To avoid foreclosure, he filed for Chapter 7 bankruptcy protection.

These statements are, for the most part, consistent with the allegations in his complaint and with the excerpts of his deposition testimony (Ex. B to defendant's motion) discussed above. They are not supported by any documents. Plaintiff does submit an affidavit (the copy of which in the Court file is neither signed nor notarized). However, it simply states that "all of he (sic) factual statements made by me or my representatives are true and correct."

By way of argument, plaintiff states that the exculpatory agreements were not signed by both parties and therefore are not enforceable. He acknowledges concern about the absence of written confirmation of some of the statements made by bank employees, but he states that "it is feasible that, based on surrounding actions and agreements the Court may find in Niedermeyer's favor." Response at 3. He reiterates that while the bank was purportedly trying to help him, it actually obtained $29,000 of additional payments for which he received nothing. He argues that the signatures of bank employees on some of the agreements should satisfy the statute of frauds.

He suggests that he is not the first person to have been misled into thinking that "pre-approval" means approval.

Unfortunately, these arguments do not address the nub of the problem with the plaintiff's case. There are numerous writings documenting the various restructuring proposals and agreements. However, plaintiff has not complained that the defendant broke any obligation it incurred under those documents. His response to the motion for summary judgment makes no attempt to analyze the actual documents. Rather, his complaint is that bank employees Jessica Worthy, Nakeya Johnson and Phillip Scourten made additional verbal promises and agreements regarding modification of his loan obligations on which he relied to his detriment. The statute requires that any such agreements be written and signed by the lender.

I have read every one of the documents and deposition excerpts submitted by the defendant to see whether there is any writing that might arguably satisfy the statute of frauds, but I have found none. Nor has plaintiff pointed out any specific thing in any of these documents on which he can rest his opposition to the motion. Once a party seeking summary judgment has come forward with evidence indicating that there is no genuine and material fact dispute regarding the applicability of the statute of frauds, the party opposing summary judgment has the burden to come forward with affidavits, documents or other evidence indicating that there is a genuine material fact dispute. *See* Fed. R. Civ. P. 56(c)(1)(A). Plaintiff has shown that there are factual disputes, but he has not shown that the disputes are material to whether the statute of frauds applies.

Although plaintiff has not raised the issue, I have also considered whether a colorable argument can be made that C.R.S. § 38-10-124(2) does not apply because the credit agreements(s) were not in excess of $25,000. However, the verbal agreements were for a

restructuring of his loan. Plaintiff alleges, at a minimum, $29,000 in unnecessary payments (Complaint ¶¶6, 7; response to motion for summary judgment at ), plus $40,000 or at least $18,000 in increased debt (Complaint ¶11; response to motion for summary judgment at 2). Moreover, as discussed in connection with the federal jurisdiction issue, plaintiff does not dispute the calculations of defense counsel that put the amount of actual damages in controversy above $75,000. The Court is unable to conclude from plaintiff's pleadings that a reasonable argument can be made that the alleged verbal agreements, either singly or in combination, did not exceed $25,000.

It may be that plaintiff was poorly treated by bank employees. However, the Court finds that there is no genuine issue of material fact in dispute concerning the applicability of the statute of frauds. The Court concludes as a matter of laws that plaintiff's claims are barred by C.R.S. § 38-10-124(2). Accordingly, the motion for summary judgment is granted. Plaintiff's claims and this civil action are dismissed with prejudice. Defendant is awarded its reasonable costs.

DATED this 14th day of December, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge